UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT OTIS BURKE, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 22-cv-3464 |
| : | |
| CHERYL STEBERGER, *et al.*, : | |
|     Defendants. : | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                                                    **February 16, 2023**
**United States District Judge**

Plaintiff Robert Otis Burke, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 with respect to two assaults he suffered while he was incarcerated at Lancaster County Prison in April and May of 2022. Currently before the Court are Burke's Complaint[1] (ECF No. 1) and his Motion to Proceed *In Forma Pauperis* (ECF No. 8). For the following reasons, the Court will grant Burke leave to proceed *in forma pauperis*, and Burke's Complaint will be dismissed in part for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and permitted to proceed in part.

**I.    FACTUAL ALLEGATIONS**[2]

Burke alleges that he was physically assaulted twice during his incarceration at Lancaster County Prison ("LCP"). Burke names corrections officer Keith Mitchell as a Defendant and

---

[1] Burke initiated this action by filing a *pro se* Complaint (ECF No. 1). However, he failed to sign his Complaint. By Order dated January 24, 2023 (ECF No. 9), Burke was directed to complete and return a Declaration with his original signature to cure this deficiency. Burke submitted a Declaration (ECF No. 10) with his original signature on February 6, 2023.

[2] The facts set forth in this Memorandum are taken from Burke's Complaint. The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

claims that on April 13, 2022, Mitchell punched him in the back of the head and put him in a choke hold until Burke was on the ground. (Compl. at 4-5, 7.) Burke further asserts that Mitchell "kept choking" him even after he was on the ground. (*Id.* at 7.) Burke alleges that Mitchell injured his neck, back, right wrist, and right ankle and caused a lump on the back of his head. (*Id.*) Burke received Tylenol and ibuprofen for his injuries, as well as x-rays of his back and neck. (*Id.*) Burke also names corrections officer E. Barr as a Defendant and asserts that Barr assaulted him in a separate incident on May 4, 2022. (*Id.*) Burke alleges that while he was wearing handcuffs Barr pushed him from behind causing Burke to fall. (*Id.*) Burke claims that Barr then proceeded to "yank the tether (mini leash) attached to the cuffs[,]" picked Burke up, dropped him twice, and then kicked him. (*Id.*) Burke asserts that Barr's actions further injured his back, neck, ankle, and wrists. (*Id.*) Burke points out that the handcuffs lacerated his wrists, and alleges that he was treated with Tylenol, naproxen, baclafin [sic, probably baclofen], Prilosec, and muscle rub, but has not received an MRI to date. (*Id.*)

   Burke also names several additional employees at LCP as Defendants: (1) Warden Cheryl Steberger; (2) Deputy Warden William Aberts; (3) Major Lou Chirchello; (4) Captain Thomas Jenkins; and (5) Institutional Investigator Hackler. (*Id.* at 2-4, 6.) Burke alleges in conclusory fashion that Warden Steberger "acted with deliberate indifference[.]" (*Id.* at 6.) With respect to Aberts, Chirchello, and Jenkins, Burke asserts in conclusory fashion that these prison officials also acted with deliberate indifference and disregarded excessive risks to Burke's health and safety. (*Id.*) Burke also claims that Investigator Hackler failed to speak to Burke and did not assist Burke in filing a report for assault and battery, which also constitutes deliberate indifference. (*Id.*) Based on the allegations of the Complaint, Burke seeks compensatory

damages in the amount of $7,500,000, physical therapy for his injuries, a protection from abuse order, counseling for his mental and emotional health, and release from prison.[3]  (*Id.* at 7.)

## II.     STANDARD OF REVIEW

The Court will grant Burke leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678. As Burke is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[3] To the extent Burke seeks relief in the form of his release, the Court notes that this request is moot as Burke was released on or about September 1, 2022.  (*See* ECF No. 5).

### III.     DISCUSSION

Burke asserts claims for violations of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, the vehicle by which constitutional claims may be brought in federal court. (Compl. at 4.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.     Official Capacity Claims

Burke has sued all Defendants in both their individual and official capacities. Official capacity claims are indistinguishable from claims against the entity that employs the defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Since Burke's official capacity claims against the individual LCP Defendants are essentially

claims brought against their employer, Lancaster County, the Court will analyze these claims according to the standards for pleading a municipal liability claim.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). Here, Burke has failed to identify a specific policy or custom of Lancaster County that caused the violation of his constitutional rights. Accordingly, Burke's official capacity claims against the LCP Defendants will be dismissed without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

### B.     Individual Capacity Claims Against Mitchell and Barr

Because Burke was a pretrial detainee during the relevant events,[4] the Due Process Clause of the Fourteenth Amendment governs his claims alleging excessive force against Defendants Mitchell and Barr.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted).  To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable."  *Id*. at 396-97.  "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used; the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.*  at 397.  Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'"  *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'"  *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

---

[4] A review of public records makes clear that Burke was a pretrial detainee at the time of the relevant events alleged in the Complaint.  *See Commonwealth v. Burke*, CP-36-CR-0000903-2022 (C.P. Lancaster). Accordingly, it is the Due Process Clause of the Fourteenth Amendment that applies to his excessive force claims in this case.

Burke alleges that Mitchell not only punched him in the back of the head and put him in a choke hold until Burke was on the ground, but that Mitchell "kept choking" him even after he was on the ground causing injuries to Burke's head, neck, back, right wrist, and right ankle. (Compl. at 7.) Burke further asserts that Barr pushed him from behind at a time when Burke was already restrained in handcuffs, causing Burke to fall, and that Barr then yanked the tether attached to the cuffs, picked Burke up, dropped him twice, and kicked him, causing additional injuries, including lacerations to his wrists. (*Id.*) Accepting Burke's factual allegations as true and drawing all reasonable inferences in his favor at this early stage of the proceedings, Burke has alleged plausible Fourteenth Amendment excessive force claims against both Defendants Mitchell and Barr. *See Kingsley*, 576 U.S. at 396-397. Accordingly, Burke's individual capacity claims against Defendants Mitchell and Barr will proceed at this time.

### C.  Individual Claims Against the Supervisory Defendants at LCP

Burke names Warden Cheryl Steberger, Deputy Warden William Aberts, Major Lou Chirchello, Captain Thomas Jenkins as Defendants, and Institutional Investigator Hackler (collectively, "the Supervisory LCP Defendants") and asserts claims against them in their individual capacities. (Compl. at 2-4, 6.) The entirety of Burke's allegations against the Supervisory LCP Defendants contends that:

> Warden – Cheryl Steberger acted with deliberate indifference as well as Deputy Warden – William Aberts, Major – Lou Chirchello, Captain – Thomas Jenkins also acted with deliberate indifference in a subjective sense and disregarded excessive risks to my health and safety. They all refused to provide relief in the form of avoid contact, immediate release from RHU/the hole and/or Prison. . . . They all said my claims were not feas[i]ble or unfounded. Investigator – Hackler never spoke with me nor assisted in filing report for assault and battery. He also sent [a] blank response to my request. This is deliberate indifference as well. (*Id.* at 6.)

To state a plausible claim against any of the Supervisory LCP Defendants, Burke is required to plead particular allegations explaining how each Defendant, through his or her own individual actions, violated Burke's constitutional rights with respect to his claims for excessive force. *See Iqbal*, 556 U.S. at 676; *see also Dooley*, 957 F.3d at 374. Burke's conclusory allegations against these Defendants are insufficient to assert personal involvement in the alleged incidents of excessive force. *See Rode*, 845 F.2d at 1207. To the extent Burke seeks to hold the Supervisory LCP Defendants liable simply based on their supervisory role, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

To the extent Burke seeks to hold these Defendants liable for the actions of Defendants Mitchell and Barr, supervisory liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 22015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel.*

*J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Burke has failed to allege that any of the Supervisory LCP Defendants established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm. Also absent from the Complaint are any allegations that any of the Supervisory LCP Defendants participated in violating Burke's rights, directed Mitchell or Barr to violate them, or, as the people in charge, had knowledge of, and acquiesced in, the unconstitutional conduct of their subordinates – Mitchell and Barr. Accordingly, the individual capacity claims against Defendants Steberger, Aberts, Chirchello, Jenkins, and Hackler are not plausible and will be dismissed without prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Burke leave to proceed *in forma pauperis*. Burke's Fourteenth Amendment excessive force claims against both Defendants Mitchell and Barr will proceed to service. Burke's remaining claims against all remaining Defendants will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. An appropriate Order follows.

                                          **BY THE COURT:**

                                          */s/ Joseph F. Leeson, Jr.*
                                          **JOSEPH F. LEESON, JR.**
                                          **United States District Judge**