**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

ROBERT OTIS BURKE,             :
           Plaintiff,      :
                        :
      v.               :          No. 5:22-cv-3464
                        :
ETHAN BARR, *et al*.,           :
          Defendants.   :

_____

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 51 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                         **February 23, 2024**
**United States District Judge**

## I.    INTRODUCTION

On October 11, 2023, Burke filed an Amended Complaint bringing, among other claims, a civil rights action pursuant to 42 U.S.C. § 1983 with respect to three assaults he suffered while incarcerated at Lancaster County Prison. Burke seeks to hold liable the Corrections Officers involved in the assaults as well as a host of supervisors at the prison. He also seeks to challenge the conditions of his confinement and the retaliatory behavior of the officers. On November 9, 2023, Defendants filed a Motion to Dismiss. For the reasons that follow, the motion is granted in part and denied in part.

## II.    BACKGROUND

### A.    Factual Background

The factual allegations, taken from the Amended Complaint, *see* Am. Compl., ECF No. 35, are as follows.

The instant litigation arises out of three assaults on Burke while he was incarcerated at Lancaster County Prison ("LCP"). The first occurred in April of 2022. Then, Burke and

Corrections Officer ("CO") Keith Mitchell had several interactions that culminated in a physical altercation.  The first interaction came about on April 11, 2022, after Burke was late to the medication call.  As Burke left his cell for his daily medication, Mitchell questioned Burke as to why he was out of his cell.  Am. Compl. ¶ 5.  Burke explained that he was on a call and did not hear the call for medication.  *Id.* ¶ 6.  After receiving his medication, Burke made his way back to the cell when Mitchell began to yell profanities and threats at him.  *Id.* ¶¶ 7, 9.  On April 13, 2022, after Burke's dinner tray arrived, he realized his tray was missing items and asked Mitchell to call the kitchen and replace the missing items.  *Id.* ¶¶ 16-18.  Mitchell then entered Burke's cell to conduct a security check.  *Id.* ¶ 20.  To facilitate the check, Mitchell instructed Burke to head to the day room.  *Id.* ¶ 22.

At some point during the search, Mitchell threw all of Burke's sporks on the floor.  *Id.* ¶ 25.  Burke protested.  *Id.* ¶ 26.  When the search was complete, Mitchell ordered Burke back into the cell.  *Id.* ¶ 28.  On his way back to the cell, Burke inadvertently brushed his shoulder against Mitchell.  *Id.* ¶ 30.  With Burke's back now to Mitchell, Mitchell attacked Burke, grabbing his neck, striking him in the back of the head, putting Burke in a choke hold, and slamming him to the ground.  *Id.* ¶ 33.  Burke almost lost consciousness because of the hold.  *Id.* ¶ 34.  Mitchell then called a "Code 13" to report an inmate/staff altercation.  *Id.* ¶ 35.

At that point, Sergeants Wendling, Martin, Mengistaeb, and Lieutenant Leath arrived at the cell with other COs.  *Id.* ¶ 37.  Burke contends that he suffered significant physical injuries to his head, neck, back and wrist and suffers from severe and enduring neck pain.  *Id.* ¶¶ 40, 44.  The nurse who examined him noted no physical injuries.  *Id.* ¶ 41.

After the incident, Burke was placed in the Restricted Housing Unit.  *Id.* ¶ 48.  Not long after, Wendling visited Burke's cell to tell him that "they" viewed the video and that Burke was

not in trouble.  *Id.*  Burke then proceeded to tell his side of the story which Wending told him

was consistent with what the video showed.  *Id.* ¶ 49.  Notwithstanding, Burke was charged with

assault against Mitchell on April 13, 2022.  *Id.* ¶ 52.  Burke avers that the misconduct report

drafted by Mitchell and submitted to his supervisors was fabricated.  *Id.* ¶ 53.  The following

defendants saw the video and were thus aware of the fabrication:  Leath, Wendling, Martin,

Megistaeb, Steberger, Hackler, Aberts, Jenkins, and Chirchello.  *Id.* ¶¶ 54, 55.  At an April 20,

2022, disciplinary hearing, Burke's charges were dismissed.  *Id.* ¶¶ 60-62.

        The second incident took place not long after.  On April 24, 2022[1], Burke was housed at

the RHU as a result of the aforementioned incident.  *Id.* ¶ 85.  On that day, Burke confronted

Barr, asking him why he was denied yard and shower.  *Id.* ¶ 86.  In response, Barr stated "Stupid

n[*****] what the fuck do you want?"  *Id.* ¶ 87.  Burke then "snapped" at Barr and was locked

down for four days.  *Id.* ¶¶ 88-89.  Burke has had further confrontations with Barr.  On May 4,

2022, Barr visited Burke's cell for recreation time.  *Id.* ¶ 96.  While escorting Burke to the yard,

Barr pushed Burke for not walking at a steady enough pace.  *Id.* ¶ 104.  When Burke did not

comply, Barr grabbed Burke and dragged him against a wall before dropping him to the ground.

*Id.* ¶ 106.  At this point, Burke was in fear of Barr and refused to return to his cell.  *Id.* ¶¶ 109-

113.  Barr then called in a Code 13 and began to use force including twisting Burke's arm and

kicking him.  *Id.* ¶¶ 115-116.  Burke was issued another misconduct report for this incident

which was dismissed in part.  *Id.* ¶¶ 119, 121-122.  Burke avers that the use of force was a result

of two grievances Burke filed against Barr.  *Id.* ¶ 126.  Burke again avers that the CO filed a

fabricated misconduct report detailing the interaction which Steberger, Hackler, Aberts,

---

[1]        While paragraph 85 says 2023, the Court believes Burke meant to say 2022 as reflected
elsewhere in his Complaint.  *See e.g.* ¶ 91.

Chichello, and Jenkins "delegate[d]" the COs to do.  *Id.* ¶ 133.  The misconduct report is inconsistent with the video surveillance reviewed by the same.  *Id.* ¶¶ 134-35.

The third incident involves Defendant Fischer.  On May 1, 2022, Burke was suffering a nervous breakdown.  *Id.* ¶ 149.  As a result, Fischer escorted Burke to the nurse's office where he made a verbal grievance about Fischer's conduct.  *Id.* ¶ 152.  Fischer was present for the grievance and disputed the claims.  *Id.* ¶ 154.  The grievances generally arise out of Fischer's tacit approval of Barr and Mitchell's abusive actions toward the inmates such as denying Burke the right to clean his cell, confiscating inmate property, disallowing showers and recreation time, and disallowing access to the law library.  *Id.* ¶¶ 163-167.  Afterward, and in retaliation, Fischer fabricated a misconduct report alleging that Burke incited a riot.  *Id.* ¶ 155.

### B.      Procedural Background

On August 26, 2022, Burke filed an initial Complaint.  *See* ECF No. 1.  On February 16, 2023, this Court screened the Complaint, permitting the action to proceed in part and granting Burke leave to proceed *in forma pauperis*.  *See* ECF No. 12.  On May 2, 2023, Defendants Barr and Mitchell filed an Answer.  *See* ECF No. 19.  On August 21, 2023, Burke moved for leave to voluntarily withdraw or, in the alternative, amend his Complaint to bring new claims and include additional defendants.  *See* ECF No. 29.  On September 20, 2023, the Court granted Burke leave to amend his Complaint within 30 days.  *See* ECF No. 34.  On October 11, 2023, Burke filed an Amended Complaint generally bringing a civil rights action pursuant to 42 U.S.C. § 1983 arising out of the above noted incidents.  *See* Am. Compl.  On November 9, 2023, Defendants filed  a Motion to Dismiss.  *See* ECF No. 51.  On November 28, 2023, this Court granted Burke's

request for an extension of time to respond to the Motion.  *See* ECF No. 53.  To date, Burke has not filed a response.[2]

### C.     Construction of Claims

Burke has sued Correctional Officers Ethan Barr and Keith Mitchell, Sergeants Jodi Wendling, Naeb Mengisteab, Daniel Martin, Michael Fischer, and Oswaldo Cora, Lieutenant Jamal Leath, Warden Cheryl Steberger, Deputy Warden William Aberts, Major Lou Chirchello, Captain Thomas Jenkins, and Investigator Hackler in their individual capacities.  In its official and individual capacity, Burke also sues the Lancaster County Prison.

The Court construes Count I of Burke's Amended Complaint as follows.[3]  Against Mitchell, he asserts excessive force, assault, and battery.  Against Defendants LCP, Steberger, Hackler, Aberts, Chirchello, Jenkins, Cora, Wendling, Martin, Mengistaeb and Leath, he asserts supervisory liability for excessive force.  Additionally, but also pled under Count I, he asserts intentional infliction of emotional distress against Mitchell, LCP, Steberger, Hackler, Aberts, Chirchello, and Jenkins.

In Count II, Burke asserts excessive force, retaliation, assault, and battery against Barr as well as supervisory liability for excessive force against LCP, Steberger, Hackler, Aberts, Cora, Chirchello, and Jenkins.[4]  In Count III, Burke alleges a violation of his Fourteenth Amendment

---

[2]     In the Eastern District of Pennsylvania, if any party opposing a motion does not file a response within fourteen days of being served the motion, the court may grant the motion as uncontested.  *See* E.D. Pa. L.R. 7.1.  Nevertheless, the Third Circuit Court of Appeals discourages dismissing a *pro se* civil rights action based only on a plaintiff's failure to respond to a motion to dismiss without considering the merits.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).  Therefore, the Court considers Defendants' Motion uncontested and proceeds to the merits.

[3]     *Pro se* pleadings are liberally construed.  *See Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005).

[4]     Throughout the Amended Complaint, Burke also mentions libel, slander, and defamation but develops no coherent argument on those theories.

rights and unlawful retaliation against Fischer.  Finally, in Count IV, Burke asserts municipal liability against Cheryl Steberger and LCP for the policy and practices that have encouraged the use of excessive force.

The Motion to Dismiss is brought by Defendants Jodi Wendling, Naeb Mengisteab, Daniel Martin, Michael Fischer, Oswaldo Cora, Jamal Leath, Cheryl Steberger, William Aberts, Lou Chirchello, Thomas Jenkins, Investigator Hackler, and Lancaster County Prison.[5]

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

---

[5]      For clarity's sake, if granted in full, the Motion seeks to reduce the instant litigation to just Ethan Barr and Keith Mitchell.

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).  The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.      Section 1983 – Review of Applicable Law

42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete,* 845 F.2d 1195 ,1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

"[I]n limited circumstances [ ] supervisors may be held liable for the unlawful conduct of subordinates." *Diorio v. Harry*, No. 21-1416, 2022 WL 3025479 at *7, 2022 U.S. App. LEXIS 21130 at *17-18 (3d Cir. Aug. 1, 2022). There are two theories of liability under which a supervisory defendant may be personally liable: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and

acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or custom which directly caused the plaintiff's constitutional harm. *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the second theory, the plaintiff "must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the [plaintiff's] risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

### C.   Excessive Force Claims – Review of Applicable Law

Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause.[6]  *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015).  The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs."  *Id.* at 400.  When a prison official stands accused of using excessive force in violation of the Eighth Amendment, the question[7] is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an

---

[6]     *See also Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) ("The Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure." (citing *Graham v. Connor*, 490 U.S. 386, 395-97 (1989)).

[7]     In answering this question, courts consider: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response."  *See Whitley v. Albers*, 475 U.S. 312, 321 (1986).

objective standard is applied to a Fourteenth Amendment claim.  *See Kingsley*, 576 U.S. at 400

(explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that

"pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously

and sadistically'"); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021).  To state a

Fourteenth Amendment claim, a plaintiff "must show only that the force purposely or knowingly

used against him was objectively unreasonable."  *See Kingsley*, 576 U.S. at 396-97.

The reasonableness standard is also in evaluating whether an officer used excessive force

under Pennsylvania law.  *See Lopez v. City of Lancaster*, No. 19-5104-KSM, 2021 U.S. Dist.

LEXIS 148599, at *22 (E.D. Pa. Aug. 9, 2021).  Under Pennsylvania law, a claim for excessive

force by an officer is a claim for assault and battery.  *See Russoli v. Salisbury Twp.*, 126 F. Supp.

2d 821, 870 (E.D. Pa. 2000).  "Assault is an intentional attempt by force to do an injury to the

person of another, and a battery is committed whenever the violence menaced in an assault is

actually done, though in ever so small a degree, upon the person."  *Renk v. City of Pittsburgh*,

641 A.2d 289, 293 (Pa. 1994) (internal quotations omitted).  Corrections officers and police

officers may use necessary force in the performance of their duties.  *See id.*; *Regassa v.*

*Brininger*, No. 20-2642, 2021 U.S. App. LEXIS 30358, at *3 (3d Cir. Oct. 12, 2021).  It is the

reasonableness of such force used that determines whether the officer's conduct constitutes an

assault and battery.  *See Renk*, 641 A.2d at 293.

### D.     First Amendment Retaliation – Prisoner Rights

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an

adverse action taken by prison officials sufficient to deter a person of ordinary firmness from

exercising his constitutional rights, and (3) a causal link between the exercise of his

constitutional rights and the adverse action taken against him." *Mack v. Warden Loretto FCI*,

839 F.3d 286, 297 (3d Cir. 2016).  Causation may be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

### E.      Municipal Liability – Review of Applicable Law

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy[8] or custom[9]." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). The policy or custom must be unconstitutional itself or be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 400, (1997); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). The plaintiff must show either: (1) an employee acted pursuant to a formal policy or a standard operating procedure; (2) the alleged violations were taken by a person with policy-making authority; or (3) an official with such authority has ratified the unconstitutional actions of a subordinate. *See McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011).

---

8       "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).

9       A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice.  *Monell*, 436 U.S. at 690.  A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson*, 478 U.S. at 156.

F.      **Fourteenth Amendment – Conditions of Confinement**

"The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees."  *Hay v. George Hill Corr. Facility*, 349 F. Supp. 3d 463, 467 (E.D. Pa. 2018).  "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'"  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)).  In assessing a Fourteenth Amendment challenge to conditions of confinement, the Court will "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose."  *Id.*

G.      **Intentional Infliction Emotional Distress (IIED) – Review of Applicable Law**

In Pennsylvania, "a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: '(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)). Pennsylvania courts have been reluctant to declare conduct "outrageous," requiring that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *See e.g., Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buczek v. First Nat'l Bank*, 531 A.2d 1122, 1125 (Pa. Super. 1987)); *Kornegey v. City of*

*Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). "Additionally, Pennsylvania law

requires that some type of physical harm be shown in order to satisfy the severe emotional

distress element." *Villarosa v. N. Coventry Twp.*, No. 15-4975, 2016 WL 4062731, at *——,

2016 U.S. Dist. LEXIS 98499, at *34 (E.D. Pa. July 28, 2016) (citing *Di Loreto v. Costigan*, 600

F. Supp. 2d 671, 691 (E.D. Pa. 2009)).

## IV.   ANALYSIS

### A.   Excessive Force Claims[10] Against Defendants Martin, Leath, Mengistaeb and Wendling

In Count I, Burke asserts a claim of excessive force against Martin, Leath, Mengistaeb,

and Wendling.  Each of these Defendants seek dismissal on the same grounds, arguing that

Burke has failed to plead their personal involvement in the use of excessive force with

appropriate particularity.  Since their arguments are identical and Burke's Amended Complaint

largely groups his references to them, the Court will address their argument together.

The sole averments related to these Defendants arise out of the first incident with CO

Mitchell.  However, it is apparent from the pleading that the *actual* use of excessive force has

nothing to do with these Defendants because the extent of their involvement comes after the fact.

Burke avers that Wendling, Martin, Mengistaeb, and Leath arrived at the unit shortly *after* the

altercation.  *See* Am. Compl. ¶ 37.  Following the incident, Mitchell prepared a misconduct

report which was "submitted to supervisory defendants such as defendants Martin, Leath,

Mengistaeb, and Wendling, who signed off on the misconduct."  *Id.* ¶ 53.

---

[10]   Because the events of these charges arise out of the same events as that of this Court's prior Opinion, the Court reiterates that the Fourteenth Amendment standard applies as a review of public records makes clear that Burke was a pretrial detainee at the time of the relevant events alleged in the Complaint. *See Commonwealth v. Burke*, CP-36-CR-0000903-2022 (C.P. Lancaster).

However, as noted, to state a plausible claim against any of these Defendants, Burke must plead particular allegations explaining how each Defendant, through his or her own individual actions, violated Burke's constitutional rights with respect to his claims for excessive force. *See Iqbal*, 556 U.S. at 676; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).  Since the pleadings regard only conduct after the alleged incident, Burke has failed to state a claim of excessive force against Martin, Leath, Mengistaeb, and Wendling.

Elsewhere in his Amended Complaint, Burke appears to invoke the sort of language that typically accompanies supervisory theories of liability.  For instance, he asserts that Leath, Wendling, Martin, and Mengistaeb "had sufficient and personal knowledge" of Mitchell's assault and "acquiesce[d]" to it.  Am. Compl. ¶¶ 54, 57.  The Court finds that these averments are merely "a formulaic recitation of the elements of a cause of action" without facts to reasonably infer their conclusion.  *See Twombly*, 550 U.S. at 555.  The thrust of Burke's claim is that by signing off on the misconduct report, these Defendants were deliberately indifferent to the use of excessive force, thereby encouraging such abuses.  However, Burke identifies just one instance of this practice, far short to the sort of custom or policy which may give rise to supervisory liability.  Further, it should be noted that Burke does not aver who exactly viewed the video or signed off on the report.  He merely avers that the report was given to supervisors *such as* Martin, Leath, Mengistaeb, and Wendling.

While these are Burke's first allegations against Martin, Leath, Mengistaeb, and Wendling, the Court nevertheless finds it is appropriate to dismiss the matter with prejudice[11] because permitting an amendment would be inequitable and futile.  Despite this being Burke's

---

[11]    *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

second filed complaint, the matter has been ongoing since August of 2022 and has yet to move

past this initial hurdle.  These matters are before the Court for the first time because Burke was

given leave to supplement his claims.  He has also failed to respond to the instant motion to

dismiss despite being granted an extension.  The Court has given Burke ample opportunity to

assert this claim and he has failed to do so.

Additionally, any further amendment would be futile because the deficiency of this

pleading is identical to the deficiency outlined in the Court's previous Opinion (which also arose

out of the altercation with Mitchell) in that Burke fails to plead either personal involvement or a

supervisory theory of liability for the claims against the prison supervisor Defendants.  *See Burke*

*v. Steberger*, No. 22-CV-3464, 2023 WL 2054276 at *3-4 (E.D. Pa. Feb. 16, 2023).

Accordingly, Count I is dismissed with prejudice as to Martin, Leath, Mengistaeb, and

Wendling.

      **B.**      **Claims Against Steberger, Hackler, Aberts, Chirchello, Cora, and Jenkins**

              **1.**      **Supervisory Liability for Excessive Force**

In its prior Opinion, this Court dismissed Burke's excessive force claims against

Steberger, Hackler, Aberts, Chirchello, Cora, and Jenkins for failing to allege any policy,

practice, or custom which caused the constitutional harm.  *See* ECF No. 11.  The Court

incorporates the reasoning of that opinion here.

Burke's theory of supervisory liability for these Defendants boils down to just two

altercations with the COs of Lancaster County Prison.  Then, after the altercations, Steberger,

Hackler, Aberts, Chirchello, Cora, and Jenkins review a video of the incident which purportedly

shows Burke as the victim of excessive force.  Nonetheless, these Defendants sign off on the

CO's fabricated report stating otherwise.  Thus, Burke alleges, these Defendants have developed

a custom by which COs can use excessive force and coverup their actions because Steberger,

Hackler, Aberts, Chirchello, Cora, and Jenkin will sign off on an incident report they know to be fabricated.

However, Burke's Amended Complaint again falls far short of alleging a policy or custom that may give rise to supervisory liability.  Setting aside the boilerplate legal conclusions, these two incidents are simply not enough.  "A custom (or practice) is established when, in the absence of a formal policy, it can be shown 'that a given course of conduct . . . is so well settled and permanent as virtually to constitute law.'"  *Korth v. Hoover*, 190 F. Supp. 3d 394, 404–05 (M.D. Pa. 2016) (quoting *Watson*, 478 F.3d at 156).

Again, the claims asserting supervisory liability for excessive force against Defendants Steberger, Hackler, Aberts, Chirchello, Cora, and Jenkins are dismissed, this time with prejudice.

### 2. Intentional Infliction of Emotional Distress

Defendants LCP, Steberger, Hackler, Aberts, Chirchello, and Jenkins also move to dismiss the claim of IIED against them, arguing that Burke has not alleged their personal involvement in the Mitchell attack at the root of the claim.  The Court agrees that this lack of personal involvement forecloses any IIED claim against these Defendants as the extent of the conduct alleged is a cover-up after the fact.  Further, the purported cover-up after the fact did not cause the physical harm.  *See Villarosa*, 2016 WL 4062731, at *12 ("Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element.").  The force did.

The Court finds that permitting Burke leave to amend the IIED claim would be futile because Burke has again failed to allege any personal involvement on the part of these Defendants and thus cannot overcome the physical harm requirement.  Consequently, the Court

dismisses the claim for IIED against LCP, Steberger, Hackler, Aberts, Chirchello, and Jenkins with prejudice.[12]

### C.      Claims Against Fischer: Conditions of Confinement and Retaliation

#### 1.      Retaliation

Count III appears to assert a Fourteenth Amendment claim and an unlawful retaliation claim against Sergeant Fischer.  Burke avers that he "verbally grieve[d]" Fischer to the prison's medical department.  Am. Compl. ¶ 154.  In response, Fischer allegedly fabricated a misconduct report alleging that Burke incited a riot.  In further retaliation, Burke avers that Fischer confiscated Burke's property and scheduled COs, with whom Burke has had issues, to work around Burke's cell.

Burke's pleadings meet the elements for retaliation.  First, the filing of a grievance is protected conduct.  *See Watson*, 834 F.3d at 422-23.  Second, a fabricated misconduct report constitutes an adverse action.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  Finally, one may reasonably infer from the facts alleged here that the fabricated misconduct report was motivated by the filing of a grievance where they occurred in close temporal proximity.  *See Watson*, 834 F.3d at 422.  This claim will survive.

---

[12]     *See Alston*, 363 F.3d at 235 (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

2.      **Conditions of Confinement**[13]

Burke's challenges to the conditions of his confinement appear to be premised on the averments in paragraphs 161 to 165 and 190 to 192.  In summation, these paragraphs aver that Fischer knowingly scheduled Mitchell and Barr to work around Burke despite their prior physical altercations with him.  The averments further claim that Fischer confiscated Burke's property, stripped his cell, deprived him of showers, refused to permit him to clean his cell, and withheld Burke's access to the law library.

At the outset, the Court disregards Burke's challenges to the scheduling of Mitchell and Barr.  That theory again seeks to impermissibly assert vicarious liability against Fischer for the actions of his subordinates.  While Burke does aver that Fisher deprived him of showers and recreation time, the Court finds that this is insufficient to establish a constitutional violation. *Tapp v. Proto,* 718 F. Supp. 2d 598, 620 (E.D. Pa. 2010) (quoting *Platt v. Brockenborough*, 476 F. Supp. 2d 467 (E.D. Pa. 2007) (holding that the Fourteenth Amendment does not require daily showers and that the denial of recreation does not amount to a constitutional violation unless it "poses a significant threat to inmate's physical and mental well being.").  Further, the averment that he was denied cleaning supplies or the opportunity to clean his cell is insufficient to state a constitutional violation absent any factual averments as to the actual condition of the cell.

---

[13]      As noted, the Due Process Clause of the Fourteenth Amendment governs conditions of confinement claims by pretrial detainees while the Eighth Amendment governs those brought by convicted persons. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  Because Burke was a pretrial detainee during the underlying events, *see* footnote 10, the Fourteenth Amendment applies.

Lastly, Burke's allegation that he was denied access to the law library does not fare any better as it does not relate to the actual conditions of his confinement.[14]

Since the Court finds that the facts alleged do not amount to a constitutional violation, the Court dismisses the claim for violation of Burke's Fourteenth Amendment Rights. It does so without prejudice because this is the first claim brought against Fischer and the first arising out of any interaction with Fischer.[15]

### D.   Municipal Liability Against Lancaster County Prison and Warden Steberger

Count IV asserts municipal (or *Monell*) liability against LCP and Warden Steberger by way of a policy of unconstitutional use of force. Initially, the Court notes that *Monell* liability applies only to municipalities, not to individuals. *See Lepre v. Lukus*, 602 F. App'x 864, 869 n.4 (3d Cir. 2015) (concluding that the district court erred in applying the *Monell* test to the § 1983 claims against the individual defendant). Count IV is therefore dismissed with prejudice as to Defendant Steberger.

As to LCP, for § 1983 liability to attach, Burke must show that unconstitutional use of force was caused by the municipality's policy or custom. However, the averments of Count IV are insufficient for two reasons. First, they are largely bare legal conclusions. For example, Burke avers that LCP and Steberger's "acts and omissions constitute a policy or practice of encouraging . . . unjustified use of excessive force" and that the two are "deliberately indifferent to the existence of an environment that tolerates and encourages unjustified use of excessive

---

[14]     The Court also notes that there is no separate claim or allegation in the Amended Complaint to suggest that this denial of access to the law library constitutes an unlawful restriction of access to the courts.

[15]     *See Alston*, 363 F.3d at 235 (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

force."  Am. Compl. ¶¶ 199, 203.  As such, they are woefully insufficient.  *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (affirming the district court's dismissal of the *Monell* claim because the "complaint made conclusory and general claims of failure to screen, train, or supervise employees. . .").  A plaintiff cannot satisfy the pleading standard by alleging misconduct through "legal conclusion[s] styled as factual allegation[s]."  *Kingsmill v. Szewczak*, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015) (finding that the plaintiff failed to allege well-pled facts in support of his *Monell* claim with respect to a policy or custom because the plaintiff's allegation regarding a police officer's prior misconduct and the City's alleged knowledge of it was merely "a legal conclusion styled as a factual allegation").

Second, what little facts are averred are insufficient to plead the sort of custom or policy that will give rise to municipal liability.  Read in the context of the entire pleading, Burke appears to argue that LCP and Steberger have created a custom or policy of falsification of misconduct reports, thereby enabling the use of excessive force against Burke as well as it's coverup.  However, this claim fails for the same reasons the supervisory liability claims fail. Burke has not sufficiently pled a custom or policy as he merely seeks to extrapolate a custom or policy from just two examples.  *See Lee v. City of Phila.*, No. 18-05332, 2019 U.S. Dist. LEXIS 107633, at *13, 17 (E.D. Pa. June 27, 2019) (dismissing the *Monell* claim because the plaintiff "failed to plead with sufficient specificity and factual support a policy that directly caused the alleged constitutional violations").

Accordingly, Count IV's municipal liability claim is again dismissed but this time, with prejudice.

## V.        CONCLUSION

Since Burke has failed to allege personal involvement or a cognizable supervisory theory of liability, the excessive force claims against Martin, Leath, Mengistaeb, Wendling, Steberger, Hackler, Aberts, Chirchello, Cora, and Jenkins are dismissed.  The lack of personal involvement also forecloses any IIED claim against Steberger, Hackler, Aberts, Chirchello, and Jenkins.

Further, because Burke's challenges to the conditions of his confinement do not amount to a constitutional violation, Count III's Fourteenth Amendment claim is also dismissed, without prejudice.  Finally, because municipal liability may not lay against an individual and because Burke's factual averments are insufficient to plead a custom or policy, the municipal liability claims against Lancaster County Prison and Steberger are dismissed.  In all other respects, the Motion is denied.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge