UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT OTIS BURKE,<br>　　　　　　　Plaintiff, | :<br>:<br>: |
| v. | :      No. 5:22-cv-3464 |
| ETHAN BARR, *et al.*,<br>　　　　　　　Defendants. | :<br>:<br>: |

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 68 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                                                                **March 19, 2025**
**United States District Judge**

## I.   INTRODUCTION

This suit arises out of a three-week span during which Plaintiff Robert Otis Burke was incarcerated at Lancaster County Prison. During that time, Burke had a number of interactions with the prison's corrections officers which he claims were marked by excessive force. When he complained, Burke alleges that he was subject to unconstitutional retaliation. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part.

## II.   BACKGROUND

### A.   Factual Background

Generally, the conduct Burke complains of arises out of his interactions with Corrections Officers Mitchell and Barr and Sergeant Fischer during April and early May of 2022 while Burke was a pretrial detainee at Lancaster County Prison.

               1.      *Events Pertaining to Corrections Officer Mitchell ("CO Mitchell")*

On April 13, 2022, Burke and CO Mitchell had an exchange which ended with Mitchell taking Burke to the ground. What led to the use of force is in dispute.

In CO Mitchell's version of events, Burke was verbally aggressive as he was being escorted back to his cell. ECF No. 69, DSOF ¶ 2. At some point, Burke stopped, turned around, and told CO Mitchell to "get him another spork." *Id.* ¶ 3. When CO Mitchell declined and told Burke to keep walking back to his cell, Burke refused. *Id.* At this point, Burke was inordinately close to CO Mitchell, prompting the officer to order Burke to back away. *Id.* ¶ 4. As Burke turned to comply, he intentionally bumped CO Mitchell's shoulder, causing CO Mitchell to move backwards. *Id.* ¶ 5. Feeling threatened, CO Mitchell ordered Burke to "cuff up." *Id.* ¶ 6. When Burke refused, CO Mitchell took Burke to the ground and summoned backup. *Id.* ¶¶ 7-8.

Burke's account differs slightly. In Burke's account, he was not verbally aggressive during the exchange. ECF No. 77, CSOF ¶ 2. Further, while he admits that he made contact with CO Mitchell as he turned around, he notes that he only inadvertently "brushed" the officer. *Id.* ¶ 5; ECF No. 60, Ex. F pp. 51:4-12. He also notes that he followed all of CO Mitchell's orders and was never ordered to cuff up. CSOF ¶ 6; ECF No. 60, Ex. F pp. 52:25-53:6.

               2.      *Events Pertaining to Corrections Officer Barr ("CO Barr")*

                       a.      May 4, 2022, Incident[1]

On May 4, 2022, CO Barr arrived at Burke's cell to escort him elsewhere. *See* ECF No. 69, Ex. J at 00:00-1:32. CO Barr escorts Burke roughly fifteen yards before beginning to push Burke back toward the cell from which he came. *Id.* at 1:32-1:42. At that point, Burke twists his

---

[1]     All relevant aspects of this interaction are captured on video which the Court has reviewed. *See* ECF No. 69, Ex. J. Accordingly, the Court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

own body and allows himself to fall. *Id*. at 1:44-1:47. CO Barr then lifts Burke back to his feet to escort him back to the cell. *Id*. at 1:47-1:52. Burke then falls again in the mouth of his cell. *Id*. at 1:52-1:59. CO Barr then summons help before trying once more to lift and nudge Burke back in the cell. *Id*. at 1:59-2:30.

       b.  Retaliation Claim

Burke was locked down from April 24th to 27th of 2022, though the circumstances leading to this lockdown are also in dispute. The crux of the claim is that CO Barr locked Burke down in retaliation for the verbal and written grievances he issued about CO Barr's conduct. These grievances were made immediately prior to the lockdown. According to CO Barr, insofar as Burke was locked down, he was neither locked down by CO Barr nor locked down because of the grievances. Rather, the lock down was because of Burke's disrespect toward CO Barr during an April 24th interaction.

     3.  *Events Pertaining to Sergeant Officer Fischer ("Sgt. Fischer")*

Burke also alleges one claim of First Amendment retaliation against Sgt. Fischer. This claim arises out of a May 1, 2022, interaction between Burke and Fischer which was captured on Fischer's bodycam.[2] That footage shows Sgt. Fischer approach Burke's cell and immediately identify himself. ECF No. 69, Ex. H 00:00-00:19. He then orders Burke to remove the toilet paper tissue covering the window into the cell. *Id*. at 00:15-00:46. Burke can be seen curled up under his bunk. *Id*. at 1:00-1:30. Burke begins complaining to Sgt. Fischer that he is in the hole and that something is "fucking with his head." *Id*. at 1:30-2:16. He then begins to complain that CO Mitchell is trying to hurt or kill him. *Id*. at 4:10-4:30.

---

[2] Again, all relevant aspects of this interaction are captured on video which the Court has reviewed. *See* ECF No. 69, Ex. H. Accordingly, the Court "view[s] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 381.

At this point, Fischer orders Burke to cuff up so he can leave the cell and be evaluated. *Id*. at 4:30-5:05. Sgt. Fischer also admonishes Burke for flooding his floor with soap and water. *Id*. All the while, Burke repeatedly states that someone is trying to kill him in his sleep. *Id*. at 5:05-7:20. Once removed from the cell and placed in a separate room, Burke is seated. *Id*. at 7:20-8:04. He then continues to repeatedly state that CO Mitchell is trying to kill him and makes other rapid and incoherent complaints about his situation. *Id*. at 8:04-10:21. Sgt. Fischer then summons a nurse who speaks to Burke while he continues to repeat that CO Mitchell is trying to kill him and make other rapid and incoherent complaints. *Id*. at 10:21-14:40. Burke then, unprompted, begins to accuse Sgt. Fischer of attempting to bribe Burke or turn him into an informant. *Id*. at 14:40-15:45. Burke continues to make these complaints for several more minutes. Eventually, Sgt. Fischer begins to escort Burke back to his cell during which Burke yells to the other inmates that Sgt. Fischer was trying to make him an informant and that he is a "fucking gangster bang bang." *Id*. at 27:55-28:26. As a result of this interaction, Sgt. Fischer issued Burke misconducts for creating a disturbance, health and safety hazard, and inciting a riot. DSOF ¶ 43. The misconduct for inciting a riot was later dismissed. *Id*.

**B.     Procedural Background**

On August 26, 2022, Burke filed a complaint asserting claims for violation of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *See* ECF No. 1. In a February 16, 2023, Memorandum, this Court dismissed all claims save for Burke's excessive force claims against COs Mitchell and Barr. *See* ECF No. 11. On August 21, 2023, Burke filed a Motion for Leave to file and Amended Complaint. *See* ECF No. 29. The same was granted in an Order entered September 20, 2023. *See* ECF No. 34.

On October 11, 2023, Burke filed an Amended Complaint asserting claims for excessive force, assault and battery, intentional infliction of emotional distress, and unlawful retaliation against COs Mitchell and Barr, Sgt. Fischer, and a number of other Lancaster County Prison employees as wells as Lancaster County Prison itself.  *See* ECF No. 35. On November 9, 2023, the Lancaster County Prison employees, Sgt. Fischer, and Lancaster County Prison moved to dismiss the Amended Complaint.  *See* ECF No. 51.  On February 23, 2024, the Court granted the Motion in part, and denied the Motion in part.  *See* ECF No. 54.  In the accompanying Order, the Court clarified the remaining claims as follows: in Count I Excessive Force, Assault and Battery against CO Mitchell; in Count II, Excessive Force, First Amendment Retaliation, Assault and Battery against CO Barr; and in Count III, First Amendment Retaliation against Sgt. Fischer.  *See* ECF No. 55.  On September 16, 2024, CO Mitchell, CO Barr, and Sgt. Fischer filed the instant Motion for Summary Judgment.  *See* ECF No. 68.  The matter is now fully briefed and ready for disposition.

**III.    LEGAL STANDARDS**

    **A.    Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

B.     **42 U.S.C. § 1983 Claims Generally – Review of Applicable Law**

42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to …§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

### C. Excessive Force – Prisoner – Review of Applicable Law

Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause.[3] *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015). The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Id.* at 400. When a prison official stands accused of using excessive force in violation of the Eighth Amendment, the question[4] is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim. *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021). To state a Fourteenth Amendment claim, a plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *See Kingsley*, 576 U.S. at 396-97.

---

[3] *See also Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) ("The Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure." (citing *Graham v. Connor*, 490 U.S. 386, 395-97 (1989)).

[4] In answering this question, courts consider: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response." *See Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The reasonableness standard is also in evaluating whether an officer used excessive force under Pennsylvania law. *See Lopez v. City of Lancaster*, No. 19-5104-KSM, 2021 U.S. Dist. LEXIS 148599, at *22 (E.D. Pa. Aug. 9, 2021). Under Pennsylvania law, a claim for excessive force by an officer is a claim for assault and battery. *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000). "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal quotations omitted). Corrections officers and police officers may use necessary force in the performance of their duties. *See id.*; *Regassa v. Brininger*, No. 20-2642, 2021 U.S. App. LEXIS 30358, at *3 (3d Cir. Oct. 12, 2021). It is the reasonableness of such force used that determines whether the officer's conduct constitutes an assault and battery. *See Renk*, 641 A.2d at 293.

**D.     First Amendment – Retaliation – Prisoner – Review of Applicable Law**

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016). Causation may be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

E.  **Assault & Battery**

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Cohen v. Lit Brothers,* 209, 70 A.2d 419, 421 (Pa. Super. 1950).  "The fact that contact occurs without consent is sufficient to establish that it is 'offensive,' and '[n]o intent to harm the [plaintiff] need be established.' " *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 584 (E.D. Pa. 2016) (quoting *Cooper ex rel. Cooper v. Lankenau Hosp.*, 616 Pa. 550, 51 A.3d 183, 191 (Pa. 2012)). While "police officers are privileged to batter others in the course of their duties; '[a] police officer may be held liable for assault and battery [if] a jury determines that the force used in making an arrest is unnecessary or excessive.' " *Lopez*, 2021 WL 3487324 at *10 (quoting *Renk*, 641 A.2d at 293).

F.  **Intentional Infliction of Emotional Distress – Review of Applicable Law**

In Pennsylvania, "a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: '(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.' " *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)). Pennsylvania courts have been reluctant to declare conduct "outrageous," requiring that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *See e.g., Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buczek v. First Nat'l Bank*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (Pa. Super. 1987)); *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). "Additionally,

Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element." *Villarosa v. N. Coventry Twp.*, No. 15-4975, 2016 WL 4062731, at *——, 2016 U.S. Dist. LEXIS 98499, at *34 (E.D. Pa. July 28, 2016) (citing *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009)).

## IV.     ANALYSIS

### A.     Claims against Corrections Officer Mitchell

#### 1.     *Excessive Force*

Burke claims he was subject to excessive force when CO Mitchell took him to the ground during the April 13, 2022, interaction. In his Motion, CO Mitchell makes essentially two arguments for why the force he used against Burke was constitutionally permissible. First, he argues that the force was necessary to stop Burke from walking away after Burke intentionally bumped him and refused to obey his order to cuff up. Second, CO Mitchell argues that there was no indication of injury.

With regard to the latter argument, the Court notes that while a lack of injury weighs against Burke's claim, it is not dispositive. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (explaining that an "inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim[,]" but an "inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury" (internal marks and citation omitted)).

Further, the evidence construed in a light most favorable to Burke could lead a reasonable jury to find that CO Mitchell used objectively unreasonable force. For instance, a jury could credit Burke's account of the interaction and find that CO Mitchell did not order him to "cuff up." *See Gordon v. Gill*, No. CV 11-1029-LPS, 2016 WL 937417 at *4 (D. Del. Mar. 11, 2016)

(reasoning that whether the plaintiff was compliant with orders to "cuff up" was a question of credibility and fact for the factfinder to resolve.)  Because the video footage of the interaction does not have sound, the Court is unable to determine whether the order was in fact issued.  Also, a reasonable jury could believe Burke's story that any contact between Burke and CO Mitchell was not intentional.  Such credibility determinations are inappropriate at summary judgment.  *See Savage v. Judge*, 644 F. Supp. 2d 550, 559 (E.D. Pa. 2009) ("It is not the function of this Court to make credibility determinations or resolve factual disputes when ruling on a motion for summary judgment.")  While the interaction is captured on camera, the footage here does not blatantly contradict Burke's version of events as CO Mitchell posits.

Thus, viewing the evidence in a light most favorable to Burke, a jury could conclude that the circumstances CO Mitchell was faced with did not call for the use of any force and that the force applied was unreasonable.  *See Jacobs*, 8 F.4th at 195 (reasoning that if the jury was to credit the plaintiff's version of events in which he was "defenseless and obeying orders," a reasonable juror "could find that there was no penological need for *any* additional force.") (emphasis in original).  Accordingly, the Court finds that CO Mitchell has not shown he is entitled to summary judgment on the claim for excessive force.

    2.  Torts

      a.  Assault & Battery

CO Mitchell also argues that Burke's claims for assault and battery are barred by the Political Subdivision Tort Claims Act ("PSTCA").  *See* 42 Pa. C.S.A. § 8541.  "Under the Tort Claims Act, individual officers are immune to the same extent that their employing entity is immune."  *Warren v. Prime Care Med. Inc.*, 431 F. Supp. 3d 565, 584 (E.D. Pa. 2019) (citing 42 Pa. C.S. § 8545).  "This immunity is abrogated, with respect to individuals only, for conduct

constituting a crime, actual fraud, actual malice or willful misconduct." *Id*. (quoting *Robbins v. Cumberland Cty. Children & Youth Servs*., 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002)). "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. Otherwise stated, 'the term "willful misconduct" is synonymous with the term "intentional tort."'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk*, 641 A.2d at 293 (citations omitted)). "The Pennsylvania Supreme Court has held that whether a law enforcement officer's conduct constitutes assault and battery depends on the reasonableness of the force used. In other words, 'unnecessary or excessive' force, as determined by the fact finder, may result in liability." *Desmond Goodson, v. City of Philadelphia, et. al*, No. CV 24-6461, 2025 WL 757101, at *7 (E.D. Pa. Mar. 10, 2025) (quoting *Renk*, 641 A.2d at 293).

For the same reasons the Court cannot grant summary judgment on the excessive force claim, summary judgment is inappropriate here because, viewing the facts in a light most favorable to Burke, the Court finds that a reasonable juror could find that CO Mitchell's use of force was entirely unwarranted. *See Williams v. Russell*, No. 20-CV-3511, 2024 WL 2188914 * 14 (E.D. Pa. May 15, 2024) (declining to grant summary judgment on assault and battery claims where there existed a dispute as to whether the defendants committed an intentional tort.)

      b.      Intentional Infliction of Emotional Distress[5]

---

[5] In its prior Order outlining the remaining claims, the Court neglected to include the claim for intentional infliction of emotional distress which was not subject to the November 9, 2023, Motion to Dismiss.

Burke's claim for IIED arises out of the same conduct.  CO Mitchell argues he is entitled to summary judgment on this claim because it is both barred by the PSTCA and because the undisputed facts do not reach the threshold of an IIED claim.  The Court agrees with the latter.

> [C]ourts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven. Indeed our Superior Court has noted, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987).
>
> . . .
>
> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. *See e.g., Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. 1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d. Cir.1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Hoy v. Angelone*, 720 A.2d 745, 753–54 (1998).

Here, even if Burke's version of events is accepted by the jury, it is not of the sort of "atrocious and utterly intolerable" conduct cognizable under IIED.  *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. 1988).  Further, Burke has not offered any evidence to suggest he has suffered an extreme emotional injury as a result of CO Mitchell's conduct.  *See Mastromatteo v. Simock*, 866 F. Supp. 853, 859 (E.D. Pa. 1994) (granting summary judgment on an IIED claim where, in part, the plaintiff failed to offer evidence of emotional injury).  The Court finds that no reasonable juror could find that the conduct was so extreme as

to permit recovery under IIED.  Accordingly, the Court will grant summary judgment as to this claim.

### 3. Qualified Immunity

In his response to Burke's sur-reply, CO Mitchell argues for the first time that he is entitled to qualified immunity.  *See* ECF No. 78.  Notwithstanding the propriety of raising qualified immunity for the first time in such a late brief, the Court finds the doctrine inappropriate at this juncture.  While CO Mitchell's framing of the right at issue is unclear, he cites two cases in support.  In the first, *Thompkins v. Mun. of Penn Hills*, the right at issue was framed as follows: "whether it is clearly established that a police officer uses excessive force by employing an aggressive restraining technique to handcuff a person who has admitted to committing domestic violence and is *physically resisting arrest*."  *Thompkins v. Municipality of Penn Hills*, No. 22-3012, 2023 WL 6970160, at *2 (3d Cir. Oct. 23, 2023) (emphasis added).  In the second, *Brown v. Makofka*, the Third Circuit affirmed the District Court's grant of summary judgment on a claim for excessive force where the officers pinned the plaintiff to the ground and pried his arms behind his back after the plaintiff "*physically resist[ed] arrest* by crossing his arms and gripping his protective vest so that the officers could not handcuff him."  *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016) (emphasis added).

These cases are not analogous as CO Mitchell's argument makes several factual assumptions in his favor — not the least of which is that Burke disobeyed or resisted authority.  Much like how the determination of whether CO Mitchell used unreasonable force requires a jury to resolve material factual disputes, the Court cannot determine, as a matter of law, whether CO Mitchell violated a clearly established right without resolving those same factual disputes.  *See Suarez v. City of Bayonne*, 566 Fed. Appx. 181, 186-87 (3d Cir. 2014) (holding that the

district court erred by granting qualified immunity where material factual disputes existed on the excessive force claim).

### B. Claims against Corrections Officer Barr

#### 1. *Excessive Force and Assault & Battery*[6]

Burke claims he was subject to excessive force when CO Barr, during an escort, dragged, spun, and then pushed Burke to the ground while cuffed before kicking him and placing him back in the cell. In his Motion, CO Barr makes two arguments for why the force he used against Burke was constitutionally permissible. First, he argues that he did not use force to twist and push Burke to the ground. Rather, Burke fell on his own volition. CO Barr also argues that he never kicked Burke. Second, CO Barr also notes the lack of any injury.

The Court finds that CO Barr is entitled to summary judgment on this claim because there exists no genuine dispute that he did not use objectively unreasonable force. This interaction was also captured on video, the footage of which plainly shows that it was Burke who twisted his own body and fell on his own volition. Further, at no point does CO Barr kick Burke. At worst, the footage captures a moment where Burke is lying on the ground in front of his cell when CO Barr nudges Burke with his foot. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Such is the case here. Accordingly, CO Barr is entitled to summary judgment on the claim for excessive force.[7]

---

[6] Because Burke's excessive force and assault and battery claims go hand in hand, the Court addresses them together.

[7] It follows that the May 4, 2022, incident cannot serve as an adverse action in Burke's retaliation claim because CO Barr undertook no deterring conduct.

        *2.     Retaliation*

Burke claims that he was locked down for filing grievances regarding CO Barr's conduct. CO Barr argues that he is entitled to summary judgment because there exists no adverse action and because there is no evidence from which a reasonable juror could infer that the grievances *caused* the lockdown.

First, CO Barr appears to argue that he is entitled to summary judgment because the lock down is not an adverse action where the denial of showers for 96 hours does not violate the Constitution. This argument is misguided as it conflates what it sufficient to make out a Constitutional claim for what is sufficient to claim an adverse action. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) ("It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.")

Next, CO Barr argues that Burke has failed to offer "definitive proof that his alleged denial of showers and recreation for a period of 96 hours was the result of CO Barr's Order." ECF No. 68-2 at 16. In response, Burke directs the Court's attention to his deposition testimony in which Burke states that he was told by both CO Barr himself as well as others that CO Barr was responsible for locking Burke down. ECF No. 69, Ex. G pp 35:12-36:14.

CO Barr also argues that the April 24th interaction severs the causal chain. CO Barr argues that Sgt. Fischer's bodycam footage of the May 1, 2022, interaction shows that Burke was locked down because "he was disrespectful toward CO Barr." MSJ at 16. However, Burke disputed this characterization of the interaction when he testified that that exchange began with CO Barr calling Burke a racial slur. ECF No. 69, Ex. F pp 30:16-25. Viewing the evidence in

the light most favorable to Burke, the Court holds that a reasonable juror could find that CO Barr antagonized Burke with a racial slur to invite a response so that CO Barr could lock Burke down in retaliation for filing the grievances.

Accordingly, summary judgment is inappropriate on the claim for retaliation.

### C. Claim against Sergeant Fischer

Burke alleges that Sgt. Fischer retaliated against him for making a verbal grievance about Sgt. Fischer's attempts to recruit Burke as an informant during the May 1, 2022, interaction. Burke alleges that after this grievance, Sgt. Fischer filed a false misconduct report in retaliation. Sgt. Fischer argues that he is entitled to summary judgment because there exists no genuine dispute that Burke did not engage in any protected conduct because he did not file a "verbal grievance" during that interaction as he was simply ranting during a medical evaluation. The Court agrees.

"Initially, a prisoner in a retaliation case must demonstrate that the conduct which led to the alleged retaliation was constitutionally protected." *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 697 (M.D. Pa. 2015). For a verbal or informal grievance to be protected conduct, the grievance must generally be "conveyed to prison officials in a reasonable manner" and "put prison officials on notice that [the claimant is] seeking redress." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298 (3d Cir. 2016). Here, Burke's "verbal grievance" is a lengthy and incoherent diatribe during what appears to be an unfortunate mental health episode. During this interaction, Burke repeatedly states that someone is trying to kill him. Later, he begins to accuse Sgt. Fischer of trying to recruit him as an informant. The video shows that the latter simply never took place. "Where, as here, the events at issue are captured on video and 'opposing parties tell two different stories, one of which is blatantly contradicted by the record,' the Court must view the facts 'in

the light depicted by the video.'" *See White v. Gonzales*, No. CV 22-1226, 2023 WL 6144846, at *2 (E.D. Pa. Sept. 20, 2023) (quoting *Scott*, 550 U.S. at 380-81). Because the undisputed facts show that Burke made no verbal grievance, Burke did not engage in any protected conduct. Accordingly, the Court finds that Sgt. Fischer is entitled to summary judgment on the claim for First Amendment retaliation.

## V. CONCLUSION

For the above noted reasons, Burke's claims for excessive force, assault and battery against CO Mitchell as well as his claim for retaliation against CO Barr remain. In all other respects, the Motion for Summary Judgment is granted.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge